UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

VLADEK FILLER,            )
                               )     Civil Action
                               )     Case No.1:15-cv-00048-JAW
        Plaintiff        )
v.                        )
                               )
HANCOCK COUNTY, *et al*.,    )
                               )
        Defendants.     )

## DEFENDANT MARY KELLETT'S MOTION TO DISMISS WITH INCORPORATED MEMORANDUM OF LAW

NOW COMES Defendant Mary Kellett (hereinafter "Defendant"), by and through her attorneys Richardson, Whitman, Large & Badger, PC, and hereby moves to dismiss Plaintiff's Amended Complaint.[1]  In further support thereof, Defendant states as follows:

### I.)  INTRODUCTION

Plaintiff Vladek Filler (hereinafter "Plaintiff") initiated this action by filing an eight-count Amended Complaint in state court, which was thereafter removed to this Court.  At base, he has alleged that on or about April 26, 2007, he was wrongfully arrested and charged with committing one felony offense of Gross Sexual Assault and two misdemeanor offenses of Assault against his then-wife, Ligia Arguetta Filler.  Amended Complaint at ¶ 2.  Plaintiff has further alleged that a slew of constitutional violations were committed by at least eighteen individuals and/or entities relating to the investigation and prosecution of his crimes.  Id. at ¶ 4.  Plaintiff was initially convicted of all three charges in January of 2009, but that verdict was subsequently overturned.  Id. at ¶ 2.  Plaintiff was retried in May of 2011, at which point he was convicted of one misdemeanor Assault charge and acquitted of the other two charges.  Id. at ¶ 3.

---

[1]     The undersigned accepted service on Defendant's behalf on February 17, 2015. Pursuant to Fed. R. Civ. P. 4(d)(3), Defendant's responsive pleading is due within 60 days of thereof, or April 14, 2015.  This Motion to Dismiss is, therefore, timely.

The Amended Complaint has named eighteen separate individuals and entities as party defendants.  It is incredibly long, spanning over 667 paragraphs and 103 pages. It is redundant, discusses immaterial and irrelevant facts at length, and overall is unintelligible and confusing. Plaintiff's Amended Complaint violates the requirement of a "short and plain statement of the claim" set forth in F.R. Civ. P. 8(a)(2).  As a result, Defendant is left to guess as to exactly which of Plaintiff's myriad factual allegations and theories of recovery are actually being advanced against this Defendant as opposed to the other seventeen parties Plaintiff has sued.  This Court should dismiss Plaintiff's Amended Complaint for that reason alone.

Moreover, the Amended Complaint is unduly vague in terms of deciphering what precise causes of action Plaintiff is attempting to assert against this Defendant in Counts One and Two, which are the only two counts that appear to be directed to her.  It appears, however, that any claim Plaintiff has attempted to pursue against Defendant must fail as a matter of law. Therefore, dismissal is proper pursuant to F.R. Civ. P. 12(b)(6).

II.   **DISCUSSION**

**a.) Count One Must Fail Because it Fails to State a Claim for Relief under 42 U.S.C. § 1983 for Denial of Due Process, Denial of the Right to a Fair Trial, and Malicious Prosecution under the Fourth and Fourteenth Amendments.**

While it is clear that Count One of the Amended Complaint seeks relief pursuant to 42 U.S.C. § 1983, it is not clear the grounds on which Plaintiff is basing that claim against this Defendant.  It appears as though Count One as it relates to this Defendant is predicated on two categories of allegations.  First, Plaintiff alleges that Defendant improperly advised members of law enforcement not to comply with subpoenas that Plaintiff's criminal defense attorney had issued during his prosecution.  Second, it seems that Plaintiff has alleged Defendant maliciously prosecuted him.  Both claims must fail for the reasons that follow.

**i.)   Many of the Allegations Regarding Defendant's Advice to Certain Police Officers are Barred by the Statute of Limitations.**

In Count One, Plaintiff claims that Defendant violated his rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments by instructing certain law enforcement officers not to comply with a number of subpoenas that Plaintiff's criminal defense attorney had issued. Amended Complaint at ¶¶ 522-24. However, many of those claims are barred by the statute of limitations.[2]

Plaintiff's initial prosecution began in April of 2007, and his first trial occurred in January of 2009. Id. at ¶ 2. At the time of that prosecution, Plaintiff was represented by Daniel Pileggi, Esq. Id. at ¶ 154. Attorney Pileggi issued a subpoena to Ellsworth Police Department Officer Chad Wilmot on or about May 15, 2008, pursuant to which certain documents were requested to be produced. Id. at ¶ 210. Plaintiff alleges that Defendant advised the officer not to comply with the subpoena. Id. at ¶ 212. While Plaintiff has not specifically alleged when that advice occurred, it logically must have been on or before May 29, 2008 because Plaintiff has alleged that Attorney Pileggi wrote Defendant a letter on that date complaining about it. Id. at ¶ 214. The six year statute of limitations on that expired on May 29, 2014. The claim is, therefore, time barred by 14 M.R.S. § 752.

Plaintiff next alleges that Attorney Pileggi issued subpoenas *duces tecum* to Gouldsboro Police Chief Guy Wycoff on May 15, 2008, and to Washington County Sheriff's Deputy Travis Willey on May 16, 2008 and December 18, 2008. Amended Complaint at ¶ 240 (Wycoff subpoena dated May 15, 2008); id. at ¶ 242 (Willey subpoena dated May 16, 2008); id. at ¶ 251 (Willey subpoena dated December 18, 2008). However, there is no allegation that Defendant

---

[2]   "The Supreme Court directs federal courts adjudicating civil rights claims under 42 U.S.C. § 1983 to borrow the statute of limitations applicable to personal injury actions under the law of the forum state." Street v. Vose, 936 F.2d 38, 39 (1st Cir. 1991) (citing Wilson v. Garcia, 471 U.S. 261, 276-280, 105 S.Ct. 1938 (1985)). Maine's general statute of limitations is six years. 14 M.R.S. § 752.

advised any of the officers not to comply with those subpoenas.  Even if she had, the statute of limitations would have expired on May 15, May 16, and December 18 of 2014, respectively.

Finally, Plaintiff seems to allege—although it is quite confusing and not at all clear—that Defendant also asserted a "legal privilege" on behalf of his then-wife (Ligia Filler) and a local newspaper editor (Stephen Fay) to prevent certain exculpatory documents from being produced to Attorney Pileggi.  Amended Complaint at ¶ 524.[3]  However, that claim is barred by the statute of limitations because Defendant's alleged conduct occurred by no later than May 29, 2008.  Id. at ¶ 214.  Plaintiff did not commence this lawsuit for more than six years after that date, and accordingly it is time barred.  See 14 M.R.S. § 752.

### (ii)   The Remaining Claims about Defendant's Advice to Officers not to Comply with Subpoenas Fail to State a Claim under 42 U.S.C. § 1983.

Next, Plaintiff alleges that Attorney Pileggi issued two subpoenas *duces tecum* to two other police officers in the spring of 2009.  Amended Complaint at ¶ 261 (subpoena to Deputy Willey on May 15, 2009); id. at ¶ 272 & 277 (subpoena to Sargent James Malloy of the Gouldsboro Police Department in April of 2009).  As with the other subpoenas, Plaintiff has alleged that Defendant advised those officers not to comply.  Id. at ¶¶ 262-63 (advice to Deputy Willey); id. at ¶ 279 (advice to Sargent Malloy).  While those claims are not barred by the statute of limitations, they do fail to state a cognizable claim for relief under 42 U.S.C. § 1983.

Plaintiff claims that Defendant's actions in instructing the police officers not to comply with the subpoenas deprived him of his right "[t]o timely disclosure of all material evidence favorable to the defense pursuant to *Brady v. Maryland*, *Giglio v. United States*, and their progeny, and the Due Process and Fair Trial Clauses of the Fifth, Sixth, and Fourteenth

---

[3]     Plaintiff does not specify whether Defendant actually told Ms. Filler and Mr. Fay not to produce those documents to Attorney Pileggi, or alternatively whether the assertion of "legal privilege" was the basis for Defendant's advice to Officer Wilmot not to comply with Attorney Pileggi's subpoena dated May 15, 2008, although a fair reading of the Amended Complaint suggests the latter.  See id. at ¶¶ 201-14.

Amendments to the United States Constitution." <u>Amended Complaint</u> at ¶ 535(c) (internal citations omitted).[4]

While the foregoing allegation suggests that Defendant's instructions to the officers regarding the subpoenas violated a number of Plaintiff's rights (i.e., a violation of <u>Brady</u> and <u>Giglio</u> requirements, his due process rights, and his right to a fair trial), in reality it only sets forth one constitutional violation.   A prosecutor's withholding of material evidence (whether inculpatory or exculpatory) constitutes a violation of the accused's due process rights. <u>Brady v. Maryland</u>, 373 U.S. 83, 87, 83 S.Ct. 1194 (1963).   The same is true for the withholding of evidence relating to the reliability of a witness. <u>Giglio v. United States</u>, 405 U.S. 150, 155, 92 S.Ct. 763 (U.S. 1972).   Therefore, it is redundant to say that one had their <u>Brady</u> and <u>Giglio</u> rights violated, as well as their due process rights.   Further, <u>Brady</u> is based on the denial of the accused due process rights to a fair trial. <u>Morgan v. Gertz</u>, 166 F.3d 1307, 1310 (10th Cir. 1999) ("The duties to disclose and preserve impeachment/exculpatory evidence are grounded in the due process right to a *fair trial*) (emphasis in original) (<u>citing</u> <u>Kyles v. Whitley</u>, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed. 2d 490 (1995)).   The rights afforded by the Sixth Amendment are not implicated by the facts of Plaintiff's allegations against this Defendant. Thus, the allegations in Count One really boil down to a due process argument.

However, this Defendant is absolutely immune from suit for any claim that she wrongfully withheld <u>Brady</u> materials or otherwise violated Plaintiff's due process rights by virtue of failing to turn over exculpatory evidence.   Title 42 U.S.C. § 1983 "is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them." <u>Imbler v. Pachtman</u>, 424 U.S. 409, 418, 96 S.Ct. 984 (1976). Going back as far as 1896,

---

[4]     Defendant notes that Plaintiff also alleges other constitutional deprivations in Count One in Paragraph 535(a) & (b), but those do not appear to be directed to this Defendant.

the common law has recognized that prosecutors are absolutely immune from suit for claims based upon the exercise of prosecutorial functions. Id. at 421-24. The United States Supreme Court held that the common law absolute immunity afforded to prosecutors survived the enactment of 42 U.S.C. § 1983, and that said immunity applied to cases brought under that statutory scheme. Id. at 424.

In Imbler, the plaintiff was initially tried and convicted of murder. Id. at 411-12. After failing to have his conviction overturned on a state habeas corpus petition, the plaintiff was eventually successful on a federal habeas petition. Id. at 412-15. The grounds for overturning the plaintiff's conviction included six separate instances of prosecutorial misconduct (including the culpable use of misleading and false testimony) and two instances of withholding exculpatory evidence. Id. at 414-15. The plaintiff thereafter filed a § 1983 claim against the prosecutor who obtained the murder conviction. Id. at 416. The plaintiff claimed that the prosecutor had knowingly used false evidence and failed to disclose exculpatory evidence. Id. Both the District Court and the Ninth Circuit dismissed the plaintiff's claim pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that the prosecutor was absolutely immune from suit. Id.

Ultimately, the Supreme Court held that the "well settled" common law regarding absolute prosecutorial immunity applied to § 1983 actions. Id. at 424. The Court was clear that absolute immunity does not turn on a finding of good faith, as it shields even those prosecutors whose malicious and dishonest actions deprive an individual of liberty. Id. at 427. The Court held that prosecutors are entitled to absolute immunity for activities that are "intimately associated with the judicial phase of the criminal process." Id. at 430. In other words, "in initiating and presenting the State's case, the prosecutor is absolutely immune from a civil suit for damages under s [sic] 1983." Id. at 431. In explaining the rationale behind extending

absolute immunity to prosecutors for their use of false evidence or failure to produce exculpatory evidence, the Court duly noted that:

> Moreover, suits that survived the pleadings would pose substantial danger of liability even to the honest prosecutor. The prosecutor's possible knowledge of a witness' falsehoods, the materiality of evidence not revealed to the defense, the propriety of a closing argument, and ultimately in every case the likelihood that prosecutorial misconduct so infected a trial as to deny due process, are typical of issues with which judges struggle in actions for post-trial relief, sometimes to differing conclusions. The presentation of such issues in a s [sic] 1983 action often would require a virtual retrial of the criminal offense in a new forum, and the resolution of some technical issues by the lay jury. It is fair to say, we think, that the honest prosecutor would face greater difficulty in meeting the standards of qualified immunity than other executive or administrative officials. Frequently acting under serious constraints of time and even information, a prosecutor inevitably makes many decisions that could engender colorable claims of constitutional deprivation. Defending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials.

Id. at 425-26. Accordingly, the Court dismissed the plaintiff's claims against the prosecutor based on the alleged suppression of exculpatory material.  Id. at 430-31.  See also id. at n. 34 (stating that for purposes of prosecutorial absolute immunity, there is no distinction between a prosecutor wilfully using perjured testimony as opposed to wilfully suppressing exculpatory evidence); Van de Kamp v. Goldstein, 555 U.S. 335, 343, 129 S.Ct. 855 (2009) (same).

Imbler, therefore, established that prosecutors enjoy absolute immunity for Brady violations because the decision of whether or not to turn over particular pieces of evidence is "intimately associated with the judicial phase of the criminal process."  As Plaintiff's Amended Complaint apparently sets forth a claim for relief predicated on Brady and Giglio violations, Defendant is absolutely immune from suit and dismissal is warranted under Rule 12(b)(6).

Plaintiff may argue that the absolute immunity afforded by Imbler does not apply because Defendant did not directly commit the Brady and Giglio violations complained of, but rather she "assumed the role of legal counsel" to the law enforcement officers by advising them not to

comply with the subpoenas.  As such, Plaintiff may argue that Defendant only has qualified immunity and that dismissal under Rule 12(b)(6) is not proper.

It is true that case law has established that prosecutors enjoy qualified immunity for legal advice given to law enforcement during the investigatory phase of a criminal case.  See Burns v. Reed, 500 U.S. 478, 493, 111 S.Ct. 1934 (1991).  However, the allegations in this case are different than what the Supreme Court addressed in Burns.

In that case, law enforcement personnel had detained a criminal suspect and were investigating her involvement in a shooting.  Id. at 481.  During that investigation, the officers called a local prosecutor in order to get legal advice about whether or not they could interview the suspect while she was under hypnosis.  Id. at 482.  The prosecutor advised that it was an acceptable interrogation technique.  Id. After the suspect made incriminating statements during that interview, the officers called the prosecutor a second time to see if they had probable cause to arrest the suspect.  Id. The prosecutor advised that they "probably" had probable cause.  Id. The suspect subsequently filed a § 1983 claim against the prosecutor based on the advice given to the police officer. Id. at 483.  The issue presented on appeal was whether the prosecutor had absolute immunity for the legal advice he had given.  Id.  The Supreme Court wrote that they did not believe "that advising the police *in the investigative phase* of a criminal case is so intimately associated with the judicial phase of the criminal process that it qualifies for absolute immunity." Id. (emphasis added) (internal quotations and citations omitted).

Importantly, the Burns case did not set forth a blanket rule that prosecutors *never* have absolute immunity for legal advice given to law enforcement.  Rather, the holding in that case dealt solely with legal advice given to police during the "investigative phase" of a criminal case. See id. at 493-96.  Indeed, the Court recognized that absolute immunity is concerned with the

risk of burdensome litigation against prosecutors based on their conduct in the "judicial process" or "judicial proceedings." Id. at 494. To that end, the question of whether or not absolute immunity extends to a particular set of facts depends on an analysis of "whether the prosecutor's actions are closely associated with the judicial process." Id. at 495.

In the case at hand, Defendant's alleged conduct is distinguishable from what was involved in the Burns case. There, the prosecutor gave the police advice during the "investigatory phase" regarding acceptable interrogation techniques and the existence of probable cause. That advice was given well before the initiation of any prosecution. In contrast, Plaintiff in this case was arrested and charged with his crimes on April 26, 2007. Amended Complaint at ¶ 2. Plaintiff claims that in the spring of 2009 (which was a time frame in which he was being actively prosecuted), Defendant advised police officers not to comply with Attorney Pileggi's subpoenas. Id. at ¶¶ 261, 272 & 277. Those subpoenas sought material that was allegedly directly related to his pending criminal charges. Id. On its face, Plaintiff's allegations relating to Defendant's advice to the police officers was not during the "investigatory" phase of his prosecution, but in fact occurred during a time period in which he was being actively prosecuted. Moreover, Defendant's alleged conduct directly related to the judicial phase of the case and/or judicial proceedings. Subpoenas are a form of judicial process and are issued with the authority of the Court. Defendant was required to get notice of those subpoenas, and she had the right to move to quash and/or modify the subpoenas. See M.R. Crim. P. 18(c) (Defendant's right to notice); M.R. Crim. P. 18(d) (Defendant's right to move to quash and/or modify).

Furthermore, it is imperative to note that the subpoenaed materials allegedly contained what Plaintiff claims he was entitled to in discovery anyway. In other words, the subpoenas apparently related to Brady and/or Giglio material. Under Imbler, Defendant would undeniably

have absolute immunity if she had those materials herself and made the decision not to turn them over.  Her alleged conduct in this case is but one step removed from that, i.e., advising the police not to produce the material.  Functionally, that is a distinction without a difference.

> **(iii)**  **Defendant is Absolutely Immune From Suit for any Claim Based on Malicious Prosecution.**

Count One also claims that Defendant maliciously prosecuted him and, as a result, he was deprived of his right to be free from arrest and imprisonment under the Fourth and Fourteenth Amendments absent probable cause.[5]  Amended Complaint at ¶¶ 534-36.[6] However, Defendant is absolutely immune from such a suit.

As previously discussed, Imbler held that prosecutors enjoy absolute immunity from suit for actions that are intimately associated with the judicial phase of the criminal process. One of the plaintiff's § 1983 claims against the prosecutor in that case was for malicious prosecution. Imbler, 424 U.S. at 416.  The Court determined that the decision to prosecute an individual is intimately associated with the judicial phase of the criminal process and, accordingly, "in initiating and in presenting the State's case, the prosecutor is immune from a civil suit for

---

[5]   Plaintiff also alleges that the malicious prosecution deprived him of his right to due process under the Fifth and Fourteenth Amendments.  Amended Complaint at ¶ 535 (a).  It is not clear if Plaintiff is making an argument based on substantive or procedural due process. Substantive due process does not "furnish the constitutional peg on which to hang the tort of malicious prosecution" in a § 1983 claim.  Trafton v. Devlin, 43 F. Supp. 2d 56, 60 (D. Me. 1999) (quoting Albright v. Oliver, 510 U.S. 266, 271 n.4, 114 S.Ct. 807 (1994)). Consequently, to the extent Plaintiff has attempted to predicate the malicious prosecution claim on a claimed violation of substantive due process, it must fail as a matter of law.  Relatedly, a claim under § 1983 for malicious prosecution based on violation of procedural due process rights can only exist "where no adequate post-deprivation remedy is available under state law."  Id. at 61.  This Court has recognized that Maine does indeed have a common law tort for malicious prosecution, and that consequently plaintiff's do have an "adequate state law remedy" that precludes § 1983 actions for procedural due process violations based on malicious prosecution.  Id. at 62.

[6]   Paragraph 527 also alleges that "defendants" conspired to maliciously prosecute Plaintiff.  As is consistent with the rest of the Amended Complaint, it is unduly vague and confusing because the paragraph does not specify which of the 11 separate defendants named in Count One allegedly engaged in that conspiracy.  However, it presumably did not include this Defendant as the Amended Complaint goes on to state that "they" (referring to the members of the conspiracy) "knew that the Hancock County District Attorney's office and the Court would rely on their improper actions in initiating and continuing Filler's prosecution, placing him on house arrest pending trial, and at trial itself."  Id. at ¶ 528.  It would be incongruous for Defendant to be part of the conspiracy on the one hand, and at the same time be one of the individuals that the conspiracy intended to mislead on the other hand.

damages under § 1983." Id. at 431.  Therefore, the Supreme Court held that the plaintiff's claim for malicious prosecution was barred by absolute immunity. Id.  See also Burns, 500 U.S. 478 at 485 (noting that Imbler held "at common law prosecutors were immune from suits for malicious prosecution and for defamation); Cartagena v. U.S. Dep't of Justice, 75 Fed. Appx. 795, 798 (1st Cir. 2003) (malicious prosecution claims are barred by absolute immunity); Siano v. Justices of Massachusetts, 698 F.2d 52, 57-58 (1st Cir. 1983) (same).

In this case, the Imbler decision makes it clear that Plaintiff's § 1983 claim against this Defendant for malicious prosecution is barred by absolute immunity.  Consequently, dismissal is proper under Rule 12(b)(6).

### (iv)  The Malicious Prosecution Claim Must Also Fail Because it is Barred by the State of Limitations, and Also Because Plaintiff Cannot Make a Prima Facie Showing.

In addition to the fact that Defendant is absolutely immune from the malicious prosecution claim, it is also barred by the statute of limitations.  Plaintiff was arrested and charged on April 26, 2007.  Amended Complaint at ¶ 2.  Plaintiff was indicted on or about August 8, 2007.  Id. at ¶ 55. As Maine has a general six year statute of limitations for civil actions, Plaintiff's malicious prosecution claim is well past time barred under 14 M.R.S. § 752.

Furthermore, Plaintiff cannot establish a *prima facie* case for malicious prosecution.  To succeed on that claim under Maine law, Plaintiff must prove the following:

(1)    Defendant initiated, procured, or continued a prosecution without probable cause;
(2)    Defendant acted with malice; and
(3)    Plaintiff received a favorable termination of the proceedings.

Trask v. Devlin, 2002 ME 10, ¶ 11, 788 A.2d 179.

In the case at hand, Plaintiff's initial prosecution resulted in his conviction for Gross Sexual Assault and two counts of Assault.  Amended Complaint at ¶ 57.  Plaintiff admits that

after his first conviction was overturned and he was retried, he was again convicted of one count of Assault.  Id. at ¶ 68.  Because he was convicted of one of those charges even after his second trial, Plaintiff cannot establish that he "received a favorable termination of the proceedings."

> **b.) Count Two Must Fail Because it Fails to State a Claim for Relief under 42 U.S.C. § 1983 for Defamation and Malicious Prosecution Under the Fourth and Fourteenth Amendments, and Also for Denial of his Rights to Due Process and a Fair Trial Under the Fifth, Sixth, and Fourteenth Amendments.**

Count Two, much like Count One, is not a model of clarity in terms of precisely what cause(s) of action are being presented against this Defendant.  It appears as though Plaintiff has alleged that certain statements Defendant made to the press about him were defamatory.  Plaintiff also appears to be making yet another claim against Defendant for malicious prosecution.  Once again, each of Plaintiff's claims are fatally flawed.

> **i.)     The Majority of Plaintiff's Defamation Claims are Barred by the Statute of Limitations.**

Count Two includes a number of statements that Defendant allegedly made about Plaintiff and the crimes he committed, which Plaintiff claims were "defamatory."  Maine's general six year statute of limitations applies to § 1983 claims based on defamatory comments.[7]

Plaintiff has alleged that Defendant made the following defamatory remarks, all of which occurred more than six years prior to the commencement of litigation:

1. On April 27, 2007, Defendant provided to the press a copy of an "Affidavit in Support of Arrest Warrant" that contained false information (Amended Complaint at ¶¶ 542-544);

2. On April 27, 2007, Defendant provided a copy of Plaintiff's "mug shot" to the press, which was featured on the front page of the Bangor Daily News on April 28-29, 2007 (Amended Complaint at ¶ 545); and

3. In September of 2008, Defendant falsely told the Guardian ad Litem in Plaintiff's

---

[7]       Maine has a two year statute of limitations on defamation actions.  See 14 M.R.S. § 753.  However, as previously indicated, the Supreme Court has made it clear that § 1983 actions are governed by a state's general statute of limitations for personal injury actions. See n.2, supra.

divorce / child custody case false information about Plaintiff (<u>Amended Complaint</u> at ¶ 549).

As is clear from the foregoing, the most recent statement that Defendant allegedly made occurred approximately six years and three months before this lawsuit was filed.  The oldest statement was seven years and roughly eight-and-a-half months prior to the initiation of this case.  All of those statements are therefore well beyond the six year statute of limitations in 14 M.R.S. § 752, and as such any claims based on those statements must be dismissed.

### ii) The Remaining Defamation Claim Must Fail Because Defamation Does not Give Rise to Liability Under 42 U.S.C. § 1983

Plaintiff has alleged that Defendant made one defamatory statement on January 16, 2009, which would not be barred by the statute of limitations.  <u>Amended Complaint </u> at ¶ 550. That claim must also fail because, as this Court is well aware, 42 U.S.C. § 1983 does not confer any substantive rights.  Rather, it provides plaintiffs with a procedural mechanism whereby they can seek a remedy for an alleged violation of their constitutional rights by a state actor.  The statute specifically provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,[8] shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  In other words, a plaintiff can only maintain a 1983 action when there has been some underlying violation of his constitutionally protected rights.  Count Two is fatally deficient because there is no constitutionally protected right to be free from defamation.  <u>Connecticut Department of Public Safety v. Doe</u>, 538 U.S. 1, 6-7, 123 S.Ct. 1160 (2003) ("mere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest).

---

[8] The "and laws" provision is inapposite to the case at hand.

Nearly forty years ago in the case of <u>Paul v. Davis</u>,[9] the United States Supreme Court ruled that a defamation claim will not give rise to liability under 42 U.S.C. § 1983. In that case, the plaintiff was an individual that had previously been charged with shoplifting and the defendants were local police chiefs. <u>Paul v. Davis</u>, 424 U.S. 693 at 694-95. The defendants had circulated flyers to approximately 800 area merchants in order to warn them about potential shoplifters. <u>Id</u>. at 695. The flyers included the name and photographs of the suspected shoplifters, including the plaintiff. <u>Id</u>. Subsequent to the circulation of the flyers, plaintiff's shoplifting charge was dismissed. <u>Id</u>. at 696. Eventually, the plaintiff's employer saw the flyer and admonished him. <u>Id</u>. The plaintiff thereafter filed a 1983 action against the defendants. <u>Id</u>. The district court initially dismissed plaintiff's 1983 action due to failure to state a claim. <u>Id</u>. at 696. The Sixth Circuit reversed, however, on the grounds that the plaintiff sufficiently alleged that the defamation resulted in a denial of due process. <u>Id</u>. at 697. The due process claim related to the plaintiff's assertion that: (1) the circulation of the flyer inhibited him from entering certain businesses for fear of being suspected of shoplifting and potentially being apprehended; and (2) the imputation of criminal conduct impaired his employment opportunities. <u>Id</u>.

The Supreme Court rejected the plaintiff's arguments and reversed the Sixth Circuit's decision. <u>Id</u>. at 712. The Supreme Court recognized that there were two possible premises upon which the Sixth Circuit's decision might have rested: (1) the Due Process Clause of the Fourteenth Amendment provided a cause of action for wrongs committed by state actors that were traditionally only thought of as state tort claims; or (2) a state actor's infliction of a "stigma" on a plaintiff's reputation constitutes some form of special harm to a protected liberty interest that is actionable under § 1983 and the Fourteenth Amendment. <u>Id</u>. at 699.

The Court easily disposed of the first premise on the grounds that "such a reading would

---

[9]     424 U.S. 693, 96 S.Ct. 1155 (1976).

make the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States." Id. at 701.  In other words, there would be no logical endpoint to the plaintiff's due process argument and it "would seem almost necessarily to result in every legally cognizable injury which might have been inflicted by a state official acting under 'color of law' establishing a violation of the Fourteenth Amendment." Id. at 698-99.

As to the second premise, the Court first noted that the Fourteenth Amendment's use of the words "liberty" and "property" certainly do not single out one's reputation as an interest that is entitled to special protection over and above other interests that may be protected by state law. Id. at 701.  The Court went on to hold that one's interest in their reputation is neither "property" nor "liberty" that is protected by the Due Process Clause of the Fourteenth Amendment, but rather is an interest that can be vindicated through state tort law.  Id. at 712.  "That being the case, petitioner's defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause."  Id.

In this case, it is clear that Plaintiff cannot maintain a 1983 action against Defendant based upon a claim for defamation.  While Plaintiff has claimed that the defamatory statements caused him "public ridicule, increased loss of reputation, loss of business, and earnings, and emotional and physical distress," Paul v. Davis makes it clear that those claims are insufficient to state a claim for relief under 42 U.S.C. § 1983.[10]

---

[10]        Should Plaintiff attempt to argue that any defamatory statements caused a "loss of business and earnings" that would be futile. The plaintiff in Paul v. Davis tried to make a similar argument, which the Supreme Court flatly rejected.  While a plaintiff who lost a government job due to defamatory statements made by another governmental actor may have suffered a loss of a protected liberty or property interest, see id. at 706, that is an entirely different scenario than the case at hand.  Government employees may have a reasonable expectation—arising out of statute, policy, rule, or contract—of continued employment thereby requiring a certain level of due process before termination. See generally Wojcik v. Massachusetts State Lottery Comm'n, 300 F.3d 92, 101-02 (1st Cir. 2002).  In this case, Plaintiff has not alleged that he was employed by any branch of the government.  In fact, Plaintiff has actually alleged that he ran his own small business.  Amended Complaint at ¶¶ 15, 33, 42, 558.

Finally, it should be noted that in Count Two Plaintiff also alleged that Defendant's defamatory statements "inflamed the populace of Hancock County and surrounding areas, and even a national audience against [Plaintiff], and were made to deprive [Plaintiff] of his constitutional rights to a fair trial, fair post-trial proceedings, including sentencing, and ultimately a new trial." <u>Amended Complaint</u> at ¶ 557.  On the basis of Plaintiff's own pleadings, the sole defamatory statement that Defendant allegedly made that is not time barred (i.e., the one allegedly made on January 16, 2009) could not have possibly had the result of depriving Plaintiff of any of his constitutional rights.  The statement was allegedly made one day **after** the jury returned the verdict in his first criminal trial.  <u>Amended Complaint</u> at ¶ 56 (first trial completed by January 15, 2009).  Moreover, there is no allegation that Plaintiff ever served a sentence as a result of that first conviction, let alone that any sentencing included any type of constitutional infirmity.  To the contrary, that conviction was set aside by the trial court on March 2, 2009, which was subsequently affirmed by the Law Court on September 9, 2010.  <u>Amended Complaint</u> at ¶¶ 58 & ¶ 65.  There is no allegation that Defendant's comment on January 16, 2009 played any role whatsoever in Plaintiff's second jury trial, his sentencing as a part of that trial, or his current post-conviction review process.  Even if the Amended Complaint could be read that broadly, it would be legally insufficient due to a complete lack of any factual support in the Amended Complaint to support such a bald and unadorned accusation.[11]

Accordingly, Count Two of Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted and should be dismissed by this Court, with prejudice.

---

[11]   <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (holding that a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation . . . [a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . [n]or does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotations and citations omitted).

### iii)     The Malicious Prosecution Claim in Count Two is Barred by Absolute Immunity.

For all of the reasons set forth in subsection 2(a)(iii), *supra*, which is incorporated herein by reference, Plaintiff's § 1983 claim for malicious prosecution in Count Two is also barred by absolute immunity.  See Imbler, 424 U.S. at 431.

### c.)  While it is Not Clear Whether Plaintiff's Amended Complaint Presents a Direct Claim Based on her Alleged Withholding of Exculpatory Material, Such a Claim Would be Barred by Absolute Immunity.

The Amended Complaint contains a number of factual allegations relating to Defendant's alleged wrongful withholding and/or outright refusal to turn over exculpatory materials in violation of the requirements of Brady v. Maryland.[12]

Neither Count One nor Count Two—the only two counts directed to this Defendant— appear to present a direct claim[13] for any Brady violation.  In the event the Amended Complaint is construed as making such a claim, however, it is worth reiterating that Defendant would be absolutely immune from suit for that claim.  Campbell v. State of Maine, 787 F.2d 776, 778 (1st Cir. 1986) (holding that § 1983 claims based on alleged Brady violations are barred by the doctrine of absolute prosecutorial immunity).

### d.)  The Entirety of Plaintiff's Amended Complaint Should be Dismissed Because it Violates the Requirement of a "Short and Plain Statement" set Forth in Rule 8(a)(2).

Finally, in the event that any of Plaintiff's Amended Complaint survives the grounds for dismissal discussed above, it ought to be dismissed for violation of F.R. Civ. P. 8(a)(2). To simply call Plaintiff's Amended Complaint "lengthy" would truly do a disservice to its prolixity. Plaintiff's Amended Complaint is 103 pages long and consists of 667 separate paragraphs (many

---

[12]     373 U.S. 83, 83 S.Ct. 1194 (1963).

[13]     As opposed to an indirect claim based on Defendant's alleged advice to police officers regarding subpoenas, as discussed in subsection 2(a)(ii), *supra*.

of which contain numerous factual allegations).  Indeed, the first cause of action is not set forth until after the Amended Complaint has droned on for over 78 pages and 519 paragraphs. For all of its length and complexity, however, it fails to accomplish the one true and proper goal of a complaint—to give Defendant fair notice of the claims that are being asserted against her.

Plaintiff's Amended Complaint is in direct violation of Rule 8(a)(2), which requires a Amended Complaint to include "*a short and plain* statement of the claim showing that the pleader is entitled to relief." F.R. Civ. P. 8(a)(2) (emphasis added).[14] It is well settled law that a Court may dismiss a complaint that fails to comply with Rule 8(a)'s requirement of a "short and plain" statement.  See Kuehl v. FDIC, 8 F.3d 905, 908 (1st Cir. 1993) ("A district court has the power to dismiss a complaint when a plaintiff fails to comply with the Federal Rules of Civil Procedure, including rule 8(a)(2)'s 'short and plain statement' requirement"); Black v. UNUM Provident Corp., 245 F. Supp. 2d 194, 197 (D. Me. 2003) ("A district court has the power to dismiss a complaint when a plaintiff fails to comply with Rule 8(a)'s 'short and plain statement' requirement"); In re Westinghouse Securities Litigation, 90 F.3d 696, 704 (3rd Cir., 1996) (affirming district court's dismissal of plaintiff's complaint due to the violation of Rule 8(a)).

To be sure, the purpose behind Rule 8(a)'s requirement of a "short and plain statement" is not formalistic; rather, it is to ensure that a defendant has fair notice of the claims that are being presented and to enable the defendant to formulate a response.  See generally Black, 245 F. Supp. 2d at 197.  The Amended Complaint fails to accomplish that goal in the case at hand.

In this case, Plaintiff's Amended Complaint is unnecessarily verbose and confusing in multiple respects.  Counts One and Two are completely unintelligible.  For instance, Count One is directed to eleven defendants.  It seeks relief under 42 U.S.C. § 1983, purportedly based on

---

[14]     That sentiment is further supplemented by Rule 8(d)(1), which requires that "[e]ach allegation must be *simple, concise, and direct*." F.R. Civ. P. 8(d)(1) (emphasis added).  Taken as a whole, Rule 8 very clearly places an emphasis on clarity and brevity.

"Denial of Rights to Due Process and a Fair Trial Under the Fifth, Sixth, and Fourteenth Amendments; Malicious Prosecution and Deprivation of Liberty under the Fourth and Fourteenth Amendments." <u>Amended Complaint</u> at Count One, p. 79.  It is not at all clear how many constitutional rights Plaintiff alleges were actually violated in Count One.  Depending on how one interprets its wording, Count One could be alleging as few as two or as many as ten constitutional violations.  To further compound the problem, at no point does Plaintiff clarify or specify which of those eleven defendants named in Count One violated which of those constitutional rights, or even whether they all violated all of those rights.  In fashioning a defense to this case, Defendant should not be put in a position where she has to guess as to what claims Plaintiff is making against her.  Instead, Plaintiff should submit a "simple, concise, and direct" claim in accordance with the Rules.

Along those same lines, Plaintiff's Amended Complaint contains literally hundreds upon hundreds (if not thousands) of factual allegations when one takes into consideration all of the redundancy.  Relatedly, Counts One and Two, which are purportedly directed at this Defendant, reincorporate all of the other allegations previously made in the Amended Complaint.  For instance, with respect to Count Two, that means that no less than 540 prior paragraphs (many with more than one factual allegation) are reincorporated into the count against this Defendant.  That is so despite the fact that many of those allegations have nothing whatsoever to do with this Defendant.  The result is that the Defendant must still analyze all of those 540 prior paragraphs and attempt to guess as to which allegations may or may not apply to the claims Plaintiff has asserted against this specific Defendant.

By failing to comply with the simplicity requirement of Rule 8(a), Plaintiff has made this Amended Complaint unduly confusing and has placed an unnecessary burden on both this Court

and this Defendant.  For all intents and purposes, Defendant is left to her own devices to ascertain which factual allegations actually pertain to the claims that Plaintiff has made against her and which factual allegations only relate to claims that Plaintiff is pursuing against the other fourteen defendants. Defendant should not have to engage in such a speculative endeavor.

Because Plaintiff's Amended Complaint violates both the letter and the spirit of Rule 8(a), it has completely failed to give Defendant fair notice about the claims that have been asserted (or not asserted) against her.  Consequently, dismissal is proper.  See In re Westinghouse Securities Litigation, 90 F.3d at 703 (finding that the district court's decision to dismiss a plaintiff's "unnecessarily complicated and verbose" complaint for violating Rule 8(a), with directions to simplify and narrow the scope of the complaint, made "a tremendous amount" of sense).

**III.)   CONCLUSION**

Wherefore, for all of the reasons previously set forth herein, Defendant prays for a dismissal of Plaintiff's Amended Complaint, and for her costs and attorneys' fees and such other further and additional relief as this Court deems just.

Dated at Bangor, Maine, this the 16th day of March, 2015.

                              **Defendant Mary Kellett, by her Attorneys:**

                              /s/ Frederick J. Badger, Jr.
                              /s/ Joshua A. Randlett
                              _____
                              Frederick J. Badger, Jr., Esq.
                              fbadger@rwlb.com
                              Joshua A. Randlett, Esq.
                              jrandlett@rwlb.com
                              Attorneys for Defendant Kellett

**Richardson, Whitman, Large & Badger**
One Merchants Plaza
P.O. Box 2429
Bangor, ME 04402-2429
(207) 945-5900

## CERTIFICATE OF SERVICE

I, Joshua A. Randlett, Esq., attorney for Defendant Kellett, hereby certify that on March 16, 2015, I electronically filed the foregoing *Motion to Dismiss* with the Clerk of Court by using the CM/ECF system, which will send notification of such filing to all counsel of record in the above-referenced matter.

/s/ Joshua A. Randlett
Joshua A. Randlett, Esq.
Attorney for Defendant Mary Kellett