UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| VLADEK FILLER, ) | |
| ) | Civil Action |
| ) | Case No. 1:15-cv-00048-JAW |
| Plaintiff ) | |
| v. ) | |
| ) | |
| HANCOCK COUNTY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT PAUL CAVANAUGH'S MOTION TO DISMISS WITH INCORPORATED MEMORANDUM OF LAW**

NOW COMES Defendant Paul Cavanaugh (hereinafter "Defendant"), by and through his attorneys Richardson, Whitman, Large & Badger, PC, and hereby moves to dismiss Plaintiff's Amended Complaint.[1]  In further support thereof, Defendant states as follows:

**I.)    INTRODUCTION**

Plaintiff Vladek Filler (hereinafter "Plaintiff") initiated this action by filing an eight-count Amended Complaint in state court, which was thereafter removed to this Court.  Plaintiff has alleged that on or about April 26, 2007, he was wrongfully arrested and charged with committing one felony offense of Gross Sexual Assault and two misdemeanor offenses of Assault against his then-wife, Ligia Arguetta Filler.  Amended Complaint at ¶ 2.  Plaintiff has further alleged that a slew of constitutional violations were committed by at least eighteen individuals and/or entities relating to the investigation and prosecution of his crimes.  Id. at ¶ 4. Plaintiff was initially convicted of all three charges in January of 2009, but that verdict was

---

[1]    The undersigned accepted service on Defendant's behalf on February 17, 2015.  Pursuant to Fed. R. Civ. P. 4(d)(3), Defendant's responsive pleading is due within 60 days thereof, or April 14, 2015. This Motion to Dismiss is, therefore, timely.

subsequently overturned. Id. at ¶ 2. Plaintiff was retried in May of 2011, at which point he was convicted of one misdemeanor Assault charge and acquitted of the other two charges. Id. at ¶ 3.

The Amended Complaint has named eighteen separate individuals and entities as party defendants. It is incredibly long, spanning over 667 paragraphs and 103 pages. It is redundant, discusses immaterial and irrelevant facts at length, and overall is unintelligible and confusing. Plaintiff's Amended Complaint violates the requirement of a "short and plain statement of the claim" set forth in Fed. R. Civ. P. 8(a)(2). As a result, Defendant is left to guess as to exactly which of Plaintiff's myriad factual allegations and theories of recovery are actually being advanced against this Defendant as opposed to the other seventeen parties Plaintiff has sued. This Court should dismiss Plaintiff's Amended Complaint for that reason alone.

Moreover, as best as Defendant can tell—and it is not at all clear—Plaintiff has directed one federal claim and two state law claims against Defendant. However, each of those claims are fatally flawed. First and foremost, Plaintiff's Amended Complaint constitutes a Strategic Lawsuit Against Public Participation within the meaning of 14 M.R.S. § 556 and therefore must be dismissed in its entirety. In the alternative, the Amended Complaint fails to state a claim against Defendant upon which relief may be granted within the meaning of Fed. R. Civ. P. 12(b)(6).

**II. DISCUSSION**

    **a.) Plaintiff's Amended Complaint Must be Dismissed Because it Constitutes a Strategic Lawsuit Against Public Participation.**

Plaintiff has apparently advanced three claims against this Defendant: (1) a claim under 42 U.S.C. § 1983 (Count Two); (2) a state law defamation claim (Count Seven); and (3) a state law negligent infliction of emotional distress claim (Count Eight). All three claims relate to statements that Defendant allegedly made in February of 2014. At that time, Defendant was

running for election for the Office of District Attorney for State of Maine Prosecutorial District No. 7 (Hancock and Washington Counties). <u>Amended Complaint</u> at ¶ 655. As Plaintiff admits, the statements were all allegedly made during a political speech or debate that Defendant was engaged in with regards to that election for public office. <u>Id</u>.

The specific statements that Plaintiff claims Defendant made are as follows:

1. The Board of Bar Overseers Order regarding [Mary] Kellett was only about two pieced [sic] of evidence;
2. Mary Kellett had done nothing wrong;
3. Filler got away with criminal conduct against his wife because there was an evidentiary mistake;
4. The two pieces of evidence that were so important that Kellett was sanctioned were never used in the second trial; and
5. That Filler improperly blamed everyone [including Kellett] but himself.[2]

<u>Amended Complaint</u> at ¶ 553. As Plaintiff's Amended Complaint indicates, the public speech at which these statements were allegedly made occurred at a time while Plaintiff still had a pending Petition for Post-Conviction Review related to his conviction for Assault. <u>Amended Complaint</u> at ¶ 554.

As those alleged statements were made as part of a political debate, Plaintiff's lawsuit against Defendant constitutes a Strategic Lawsuit Against Public Participation within the meaning of Title 14 M.R.S. § 556 (hereinafter the "Anti-SLAPP law"). The Anti-SLAPP law provides, in relevant part, as follows:

> When a moving party asserts that the civil claims . . . against the moving party are based on the moving party's exercise of the moving party's right to petition under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss. . . . The court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party.

---

[2] While the Court must accept Plaintiff's allegations as true for purposes of deciding the instant Motion to Dismiss, Defendant does reserve all rights to dispute the same in the event that any aspect of Plaintiff's Amended Complaint survives.

> . . .
> As used in this section, "a party's exercise of its right of petition" means any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.

14 M.R.S. § 556. The First Circuit has held that Maine's Anti-SLAPP law does indeed apply to cases pending in federal court, notwithstanding the fact that it is a state statute, because the Anti-SLAPP statute provides both procedural and substantive safeguards to defendants. Godin v. Schencks, 629 F.3d 79, 92 (1st Cir. 2010).

The initial question posed by the Anti-SLAPP statute, therefore, is whether Defendant's statements amount to the exercise of his "right to petition" as that term is defined by the statute. The Maine Law Court has held that, "[a]s is clear from the language of Section 556, the Legislature intended to define in very broad terms those statements that are covered by the statute." Schelling v. Lindell, 2008 ME 59, ¶ 12, 942 A.2d 1226. The alleged statements in this case meet the definition of the "exercise of the right of petition" in at least four ways.

First, they were oral statements made during a public debate that were connected to "an issue then under consideration or review by a judicial body." Specifically, Plaintiff had a Petition for Post-Conviction Review that was pending at the time the statements were made.

Second, the alleged statements were essentially nothing more than Defendant's disagreement with factual findings and sanctions that the Board of Overseers of the Bar—and ultimately the Maine Supreme Judicial Court—imposed against a fellow Assistant District Attorney in Defendant's office for violation of certain discovery rules during Plaintiff's first

prosecution. Defendant's statements, therefore, were "reasonably likely to encourage consideration and debate of an issue by an executive body", namely, the District Attorney's office. That is to say, the statements concerned a legitimate hot-button issue dealing with claimed discovery violations by the District Attorney's office, as well as sanctions ultimately imposed by the Board of Overseers of the Bar and Maine Supreme Judicial Court arising out of the same. The statements were made in front of potential voters and the opposing candidate for District Attorney. The statements were reasonably likely to encourage consideration and debate of that hot-button topic by voters and by the District Attorney's office. In other words, they were reasonably likely to spark a debate (initially public, and subsequently internally at the District Attorney's office) about what factually did or did not occur with respect to Plaintiff and the claimed discovery violations; whether the situation was handled appropriately or should have been handled in another manner; and whether any changes should be made going forward in light of the sanctions that had previously been imposed by the Board of Overseers of the Bar and Maine Supreme Judicial Court against one of the Assistant District Attorneys.

Third, and along those same lines, the statements were "reasonably likely to enlist public participation" in an effort to bring that very issue to the forefront of public debate. Put differently, the statements were reasonably likely to engage the populace in a discussion with the two nominees for District Attorney about Plaintiff's first prosecution, including what did or did not happen; whether the situation was handled appropriately by the District Attorney's office or alternatively if it should have been handled differently; and whether the District Attorney's office should make any internal policy changes prospectively in light of what happened.

Finally, the statements fall within the Anti-SLAPP statute's catchall provision of statements that fall within "constitutional protection of the right to petition government." The

Maine Constitution's right of petition provides, in pertinent part, that "[t]he people have a right at all times in an orderly and peaceable manner to assemble to consult upon the common good." Me. Const. art. I, § 15. Similarly, the First Amendment of the United States Constitution protects an individual's right to "petition the government for the redress of grievances." U.S. Const. amend. I. "The right to petition for redress of grievances is the *right to complain about* and complain to the government." Wolfgram v. Wells Fargo Bank, 53 Cal. App. 4th 43, 50 (Cal. Ct. App. 1997) (emphasis added); see also Brock v. Thompson, 948 P.2d 279, n.38 (Okla. 1997) ("The right to petition for redress of grievances is historically the *right to complain about* and to the government") (emphasis added). In this case, the statements allegedly made by Defendant amounted to his complaints about the government—i.e., the Board of Overseers of the Bar and the Maine Supreme Judicial Court—in regards to his disagreement with the factual findings and sanctions they imposed against a fellow Assistant District Attorney in his office in connection to Plaintiff's first prosecution.

Further, it has been recognized that "[a]lthough the right to petition and the right of free speech are separate and not identical rights, they are nevertheless 'inseparable.'" Tichinin v. City of Morgan Hill, 177 Cal. App. 4th 1049, 1074 (Cal. Ct. App. 2009). "Indeed, they necessarily overlap; the right to petition the government for relief presupposes the right to freely express and communicate one's thoughts, ideas, and opinions related to that relief; and the right of free speech necessarily includes the right to express one's grievances to the government and seek redress." Id. As the Supreme Court has soundly observed, the "First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office." Eu v. San Francisco County Democratic Cent. Committee, 489 U.S. 214, 223, 109 S.Ct. 1013 (1989) (quoting Monitor Patriot Co. v. Roy, 401 U.S. 265, 272, 91 S.Ct. 621 (1971)). "[T]he election

campaign is a means of disseminating ideas as well as attaining political office." Id. (quoting Illinois Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 186, 99 S.Ct. 983 (1979)). Furthermore, the statements that Defendant allegedly made concerned a matter of public concern as well as public figures.  See Dunn & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 758-59 (1985) ("It is speech on matters of public concern that is at the heart of the First Amendment's protection"); Curtis Pub. Co. v. Betts, 388 U.S. 130, 165, 87 S.Ct. 1975 (1967) (*Warren, C.J., concurring*) ("Our citizenry has a legitimate and substantial interest in the conduct of [public figures], and freedom of the press to engage in uninhibited debate about their involvement in public issues and events is as crucial as it is in the case of 'public officials.'").

Moreover, the Ninth Circuit has recognized a "breathing space" principle with regards to one's constitutional right to petition.  Sosa v. DIRECTV, Inc., 437 F.3d 923, 934 (9th Cir. 2006). The "breathing space" principle recognizes that "to exercise its petitioning rights meaningfully, a party may not be subjected to liability for conduct intimately related to its petitioning activities." Id.  In that case, the Ninth Circuit held that a party's pre-suit demand letter fell within the "breathing space" of one's right to petition the court system and, therefore, was protected by the right to petition. Id. at 942.

Applying the foregoing to the case at hand, the statements allegedly made by Defendant fall "within constitutional protection of the right to petition government."  The right to petition includes not only the right to complain *to* government, but also the right to complain *about* government.  Further, one's right to petition is intertwined with one's freedom of speech. Political speech and debate is the apex of free speech, and is afforded the utmost protection by the First Amendment.  Here, Defendant's alleged statements were basically his complaints about government and were made during a political debate.  Those statements allegedly made during a

7

political debate are entitled to the "fullest and most urgent application" of the protections of the First Amendment, particularly where they relate to a matter of public concern and public figures. See Eu, 489 U.S. at 223 (First Amendment has its "fullest and most urgent application" to speech made in connection to political campaigns); Dunn & Bradstreet, Inc., 472 U.S. at 758-59 (speech about matters of public concern lies at the "heart" of the First Amendment); Curtis Pub. Co., 388 U.S. at 165 (public has "legitimate and substantial interest" in conduct of public figures).

Alternatively, Defendant's alleged statements at least fall within the "breathing space" of his right to petition. The alleged statements concerned hot-button issues about certain conduct and policies within the District Attorney's office. They were allegedly made to potential voters during an election campaign. That bears an intimate relationship to conduct that would be squarely within the right to petition, i.e., having that same discussion internally with the District Attorney's office.

Because Plaintiff's claims against Defendant are based on Defendant's exercise of his right to petition, this Court must dismiss all of Plaintiff's claims unless Plaintiff meets his burden in persuading the Court that Defendant's exercise of his right to petition was "devoid of any reasonable factual support or any arguable basis in law" within the meaning of 14 M.R.S. § 556. In order to avoid dismissal, the Anti-SLAPP statute also requires that Plaintiff prove that Defendant's acts caused "actual injury" to Plaintiff, neither of which Plaintiff can establish.

> **b.) Count Two Must Fail Because Defamation Does Not Give Rise to Liability Under 42 U.S.C. § 1983.**

Alternatively, Count Two must be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). As best as the undersigned can guess (and it truly is a guess given the incomprehensible nature of the Amended Complaint), Count Two attempts to assert a misguided claim under 42 U.S.C. § 1983 against Defendant based on certain allegedly defamatory

comments. However, it is well settled law that defamation does not give rise to liability under § 1983.

As discussed above, Plaintiff has alleged that in February of 2014, Defendant made certain statements during a political debate. See Amended Complaint at ¶ 553. See also id. at ¶ 555 ("In sum . . . Kellett, Cavanaugh, and Bassano made false and defamatory statements to the press . . . all of which was outside of their prosecutorial roll or capacity.").

As this Court is well aware, 42 U.S.C. § 1983 does not confer any substantive rights. Rather, it provides plaintiffs with a procedural mechanism whereby they can seek a remedy for an alleged violation of their constitutional rights by a state actor. The statute specifically provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,[3] shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. In other words, a plaintiff can only maintain a 1983 action when there has been some underlying violation of his constitutionally protected rights. Count Two is fatally deficient because there is no constitutionally protected right to be free from defamation. Connecticut Department of Public Safety v. Doe, 538 U.S. 1, 6-7, 123 S.Ct. 1160 (2003) ("mere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest).

Nearly forty years ago in the case of Paul v. Davis,[4] the United States Supreme Court ruled that a defamation claim will not by itself give rise to liability under 42 U.S.C. § 1983. In that case, the plaintiff was an individual that had previously been charged with shoplifting and

---

[3] The "and laws" provision is inapposite to the case at hand.

[4] 424 U.S. 693, 96 S.Ct. 1155 (1976).

the defendants were local police chiefs. Paul v. Davis, 424 U.S. 693 at 694-95. The defendants had circulated flyers to approximately 800 area merchants in order to warn them about potential shoplifters. Id. at 695. The flyers included the name and photographs of the suspected shoplifters, including the plaintiff. Id. Subsequent to the circulation of the flyers, plaintiff's shoplifting charge was dismissed. Id. at 696. Eventually, the plaintiff's employer saw the flyer and admonished him. Id. The plaintiff thereafter filed a 1983 action against the defendants. Id. The district court initially dismissed plaintiff's 1983 action due to failure to state a claim. Id. at 696. The Sixth Circuit reversed, however, on the grounds that the plaintiff sufficiently alleged that the defamation resulted in a denial of due process. Id. at 697. The due process claim related to the plaintiff's assertion that: (1) the circulation of the flyer inhibited him from entering certain businesses for fear of being suspected of shoplifting and potentially being apprehended; and (2) the imputation of criminal conduct impaired his employment opportunities. Id.

The Supreme Court rejected the plaintiff's arguments and reversed the Sixth Circuit's decision. Id. at 712. The Supreme Court recognized that there were two possible premises upon which the Sixth Circuit's decision might have rested: (1) the Due Process Clause of the Fourteenth Amendment provided a cause of action for wrongs committed by state actors that were traditionally only thought of as state tort claims; or (2) a state actor's infliction of a "stigma" on a plaintiff's reputation constitutes some form of special harm to a protected liberty interest that is actionable under § 1983 and the Fourteenth Amendment. Id. at 699.

The Court quickly disposed of the first premise on the grounds that "such a reading would make the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States." Id. at 701. In other words, there would be no logical endpoint to the plaintiff's due process argument and it "would seem almost necessarily

to result in every legally cognizable injury which might have been inflicted by a state official acting under 'color of law' establishing a violation of the Fourteenth Amendment." Id. at 698-99.

As to the second premise, the Court first noted that the Fourteenth Amendment's use of the words "liberty" and "property" certainly do not single out one's reputation as an interest that is entitled to special protection over and above other interests that may be protected by state law. Id. at 701. The Court went on to hold that one's interest in their reputation is neither "property" nor "liberty" that is protected by the Due Process Clause of the Fourteenth Amendment, but rather is an interest that can be vindicated through state tort law. Id. at 712. "That being the case, petitioner's defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause." Id.

In this case, it is clear that Plaintiff cannot maintain a 1983 action against Defendant based upon a claim for defamation. While Plaintiff has claimed that the defamatory statements caused him "public ridicule, increased loss of reputation, loss of business, and earnings, and emotional and physical distress," Paul v. Davis makes it clear that those claims are insufficient to state a claim for relief under 42 U.S.C. § 1983.[5]

Finally, it should be noted that in Count Two Plaintiff has alleged that multiple

---

[5] In the event that Plaintiff attempts to argue that any defamatory statements caused a "loss of business, and earnings", that would be futile. The plaintiff in Paul v. Davis tried to make a similar argument, which the Supreme Court rejected. While a plaintiff who lost a government job due to defamatory statements made by another governmental actor may have suffered a loss of a protected liberty or property interest, see id. at 706, that is an entirely different scenario than the facts of the case at hand. Depending on the circumstances, government employees may have a reasonable expectation—arising out of statute, policy, rule, or contract—of continued employment thereby requiring a certain level of due process before termination. See generally Wojcik v. Massachusetts State Lottery Comm'n, 300 F.3d 92, 101-02 (1st Cir. 2002). In this case, Plaintiff has not alleged that he was employed by any branch of the government. In fact, Plaintiff has actually alleged that he ran his own small business. Amended Complaint at ¶¶ 15, 33, 42, & 558.

defendants made multiple defamatory statements about him. Without specifying which defendants and which defamatory statements he is complaining about, Plaintiff claimed that they "were made to deprive [Plaintiff] of his constitutional rights to a fair trial, fair post-trial proceedings, including sentencing, and ultimately a new trial." Amended Complaint at ¶ 556. See also id. at ¶ 560 (alleging that the unspecified defamatory statements "caused the initiation and continuation of Plaintiff's criminal prosecution, his loss of liberty, his wrongful conviction, and other injuries and damages"). However, none of those allegations relate to this Defendant. As previously stated, the allegedly defamatory comments that have been attributed to this Defendant were made on or about February 19, 2014. By Plaintiff's own account, his first criminal trial was completed more than five years before the allegedly defamatory comments were made, and his second criminal trial was completed almost three years prior to the statements.[6] Plaintiff's Amended Complaint omits any reference to when he was sentenced after being convicted of Assault after his second trial, but one can reasonably infer that the sentencing date was prior to February 19, 2014.[7]

Accordingly, Count Two of Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted and should be dismissed by this Court, with prejudice.

---

[6]   Plaintiff's first trial occurred between January 12-15, 2009, and the second trial occurred between May 24-27, 2011. Amended Complaint at ¶¶ 3 (second trial) & 53 (first trial).

[7]   While Plaintiff's Amended Complaint indicates that he currently is involved in a Post-Conviction Review ("PCR") of his Assault Conviction, see id. at ¶ 71, it is not clear whether Plaintiff has attempted to include anything whatsoever to do with his PCR within his 1983 claim in Count Two. To the extent Plaintiff's Amended Complaint could be read as making such a claim, it must be dismissed for failure to state a claim. The Amended Complaint does not specifically allege that there was (or is) any sort of deficiency with the PCR process, nor does it provide any factual allegations that can link any action or inaction by this Defendant on the one hand and any problem with the PCR process on the other. Without any sort of allegations in the Amended Complaint to tie the two, it is legally deficient. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (holding that a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation . . . [a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . [n]or does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotations and citations omitted).

### c.) Count Seven Must be Dismissed Because the Alleged Statements are Legally Insufficient to Constitute Defamation.

Count Seven of Plaintiff's Amended Complaint also fails to state a claim within the meaning of Fed. R. Civ. P. 12(b)(6). In order to maintain an action for defamation under Maine law, a plaintiff must establish, among other things, that the defendant made "a false and defamatory statement concerning another." Rippett v. Bemis, 672 A.2d 82, 86 (Me. 1996). Specifically, the false statement must be "of and concerning" the plaintiff. Lester v. Powers, 596 A.2d 65, 69 (Me. 1991). "A statement is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Rippett, 672 A.2d at 86. (internal quotations omitted). A statement must be taken in context, which includes the entire publication as well as the extrinsic circumstances known to any recipients of the publication. See Bakal v. Weare, 583 A.2d 1028, 1030 (Me. 1990). "Whether the statement complained of is capable of conveying a defamatory message at all is a question of law." Id. "A defamation claim requires a statement—i.e., an assertion of fact, either explicit or implied, and not merely an opinion, provided the opinion does not imply the existence of undisclosed defamatory facts." Lester, 596 A.2d at 69.

In this case, Plaintiff complains about the following four specific statements:

1) That the Board of Bar Overseers Order regarding Mary Kellett was only about two pieces of evidence;
2) That Mary Kellett had done nothing wrong;
3) That [Plaintiff] got away with criminal conduct against his wife because there was an evidentiary mistake; and
4) The two pieces of evidence that were so important that Kellett was sanctioned were never used in the second trial.

Amended Complaint at ¶ 658.

However, the first, second, and fourth statements attributed to Defendant are not "of and concerning" Plaintiff. Rather, those statements are "of and concerning" the Board of Overseers

of the Bar and Mary Kellett. Furthermore, those statements are not defamatory in the sense that they are not the type of statement that would harm one's reputation or otherwise lower one's standing in the community. Moreover, the second and fourth statements are purely matters of opinion. For all of those reasons, those statements when taken in context are legally insufficient to constitute defamation under the decisions of Rippett, Lester, and Bakal.

With regards to the third alleged statement, taken in context it is really nothing more than Defendant's opinion about why the jury acquitted Plaintiff in the second criminal trial. Under Lester, a statement of opinion cannot serve as the basis of a defamation claim.

Consequently, Count Seven should be dismissed for failure to state a legally cognizable claim for defamation under Maine law.

### d.) Count Eight Should be Dismissed Because it Fails to State a Claim for Negligent Infliction of Emotional Distress.

Count Eight of Plaintiff's Amended Complaint, which sets forth a claim for Negligent Infliction of Emotional Distress ("NIED") must also be dismissed for failure to state a claim. To successfully state a claim for NIED under Maine law, Plaintiff must establish that Defendant owed him a duty. Curtis v. Porter, 2001 ME 158, ¶ 18, 784 A.2d 18. "Plaintiffs claiming negligent infliction, however, face a significant hurdle in establishing the requisite duty, in great part because the determination of duty in these circumstances is not generated by traditional concepts of foreseeability." Id. "Although each person has a duty to act reasonably to avoid causing physical harm to others, there is no analogous general duty to avoid negligently causing emotional harm to others." Id.

The Law Court has only recognized the existence of a duty to avoid causing emotional harm to others in three very limited circumstances: (1) bystander liability actions; and (2) when a special relationship exists between the plaintiff and defendant. Id. at ¶ 19. The Law Court has

suggested that an NIED claim may also lie when the defendant has committed some other tort against the plaintiff.  Id.  In regards to that circumstance, the Law Court has clarified that the NIED claim is automatically subsumed within the other tort if that other tort allows for recovery of emotional distress damages.  Id.

Here, there is no basis in law for Plaintiff's NIED claim.  Defendant did not owe any duty to Plaintiff to avoid causing him emotional harm; this case does not involve bystander liability nor does it entail a "special relationship" between Plaintiff and Defendant.  Additionally, the Plaintiff cannot maintain an NIED action against Defendant under the third circumstances as described above for two reasons.  First and foremost, as previously discussed, Plaintiff does not have a cognizable 1983 claim or defamation claim against Defendant.  Secondly, even if Plaintiff could succeed on one of those claims (which he cannot), the claim for NIED would be subsumed because Plaintiff could recover for emotional distress in either his 1983 claim or his defamation claim. Therefore, Count Eight should be dismissed for failure to state a cognizable claim.

### e.) The Entirety of Plaintiff's Amended Complaint Should be Dismissed Because it Violates the Requirement of a "Short and Plain Statement" set Forth in Rule 8(a)(2).

Finally, in the event that any of Plaintiff's Amended Complaint survives the grounds for dismissal discussed above, it ought to be dismissed for violation of Fed. R. Civ. P. 8(a)(2). To simply call Plaintiff's Amended Complaint "lengthy" would truly do a disservice to its prolixity. Plaintiff's Amended Complaint is 102 pages long and consists of 667 separate paragraphs (many of which contain numerous factual allegations).  Indeed, the first cause of action is not set forth until after the Amended Complaint has droned on for over 78 pages and 519 paragraphs. For all of its length and complexity, however, it fails to accomplish the one true and proper goal of a complaint—to give Defendant fair notice of the claims that are being asserted against him.

Plaintiff's Amended Complaint is in direct violation of Rule 8(a)(2), which requires a complaint to include "*a short and plain* statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).[8] It is well settled law that a Court may dismiss a complaint that fails to comply with Rule 8(a)'s requirement of a "short and plain" statement. See Kuehl v. FDIC, 8 F.3d 905, 908 (1st Cir. 1993) ("A district court has the power to dismiss a complaint when a plaintiff fails to comply with the Federal Rules of Civil Procedure, including rule 8(a)(2)'s 'short and plain statement' requirement"); Black v. UNUM Provident Corp., 245 F. Supp. 2d 194, 197 (D. Me. 2003) ("A district court has the power to dismiss a complaint when a plaintiff fails to comply with Rule 8(a)'s 'short and plain statement' requirement"); In re Westinghouse Securities Litigation, 90 F.3d 696, 704 (3rd Cir., 1996) (affirming district court's dismissal of plaintiff's complaint due to the violation of Rule 8(a)).

To be sure, the purpose behind Rule 8(a)'s requirement of a "short and plain statement" is not formalistic; rather, it is to ensure that a defendant has fair notice of the claims that are being presented and to enable the defendant to formulate a response. See generally Black, 245 F. Supp. 2d at 197. The Amended Complaint fails to accomplish that goal in the case at hand.

In this case, Plaintiff's Amended Complaint is unnecessarily verbose and confusing in multiple respects. Most notably, Count Two is simply unintelligible. It purports to state a claim against five of the defendants for their alleged violation of 42 U.S.C. § 1983. To further compound the problem, the header for Count Two alleges that the specific constitutional violations include: "Defamation; Malicious Prosecution and Deprivation of Liberty Under the Fourth and Fourteenth Amendments; Denied [sic] of Due Process Rights and a Fair Trial Under the Fifth, Sixth, and Fourteenth Amendments." Amended Complaint at Count Two, p. 82. It is

---

[8] That sentiment is further supplemented by Rule 8(d)(1), which requires that "[e]ach allegation must be *simple, concise, and direct.*" Fed. R. Civ. P. 8(d)(1) (emphasis added). Taken as a whole, Rule 8 very clearly places an emphasis on clarity and brevity.

not at all clear how many constitutional rights Plaintiff alleges were actually violated in Count Two. Depending on how one interprets its wording, Count Two could be alleging as few as three or as many as ten constitutional violations. At no point does Plaintiff clarify or specify which of those five defendants named therein violated which of those constitutional rights, or even whether they all violated all of those rights. In fashioning a defense to this case, Defendant should not be put in a position where he has to guess as to what claims Plaintiff is making against him. Instead, Plaintiff should submit a "simple, concise, and direct" claim in accordance with the Rules.

Along those same lines, Plaintiff's Amended Complaint contains literally hundreds upon hundreds (if not thousands) of factual allegations when one takes into consideration all of the redundancy. By failing to comply with the simplicity requirement of Rule 8(a), Plaintiff has made his Amended Complaint unduly confusing and has placed an unnecessary burden on both this Court and this Defendant. For all intents and purposes, Defendant is left to his own devices to ascertain which factual allegations actually pertain to the claims that Plaintiff has made against him and which factual allegations only relate to claims that Plaintiff is pursuing against the other seventeen defendants. Defendant should not have to engage in such a speculative endeavor.

Because Plaintiff's Amended Complaint violates both the letter and the spirit of Rule 8(a), it has completely failed to give Defendant fair notice about the claims that have been asserted (or not asserted) against him. Consequently, dismissal is proper. See In re Westinghouse Securities Litigation, 90 F.3d at 703 (finding that the district court's decision to dismiss a plaintiff's "unnecessarily complicated and verbose" complaint for violating Rule 8(a), with directions to simplify and narrow the scope of the complaint, made "a tremendous amount" of sense).

### III.) CONCLUSION

Wherefore, for all of the reasons previously set forth herein, Defendant prays for a dismissal of Plaintiff's Amended Complaint, and for his costs and attorneys' fees and such other further and additional relief as this Court deems just.

Dated at Bangor, Maine, this the 16th day of March, 2015.

**Defendant Paul Cavanaugh, by his Attorneys:**

/s/ Frederick J. Badger, Jr.
/s/ Joshua A. Randlett

_____
Frederick J. Badger, Jr., Esq.
fbadger@rwlb.com
Joshua A. Randlett, Esq.
jrandlett@rwlb.com
Attorneys for Defendant Cavanaugh

**Richardson, Whitman, Large & Badger**
One Merchants Plaza
P.O. Box 2429
Bangor, ME 04402-2429
(207) 945-5900

### CERTIFICATE OF SERVICE

I, Joshua A. Randlett, Esq., attorney for Defendant Cavanaugh, hereby certify that on March 16, 2015, I electronically filed the foregoing *Motion to Dismiss* with the Clerk of Court by using the CM/ECF system, which will send notification of such filing to all counsel of record in the above-referenced matter.

/s/ Joshua A. Randlett
Joshua A. Randlett, Esq.
Attorney for Defendant Paul Cavanaugh