UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| VLADEK FILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:15-cv-00048-JAW |
| | ) |
| HANCOCK COUNTY et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON MOTION FOR DEFAULT JUDGMENT**

The Court grants a Plaintiff's request for an evidentiary hearing against a defaulted tortfeasor but imposes certain notice, evidentiary, and legal requirements on Plaintiff's counsel in anticipation of the hearing and demand for damages. The Court also poses some damages questions and requests counsel's assistance in responding to those issues.

I.   **BACKGROUND**

On February 4, 2015, the Defendants removed the present action commenced by Vladek Filler in Hancock County Superior Court against Linda Gleason and a number of state of Maine officials regarding a chain of extraordinary events that led to Mr. Filler being charged and acquitted of a series of state criminal charges involving his ex-wife Ligia Arguetta. *Notice of Removal* (ECF No. 1). Detailed recitations of the unusual circumstances leading to Mr. Filler's filing of his civil action are found in this Court's Order on Motions to Dismiss (ECF No. 42), 2016 U.S. Dist. LEXIS 10777, at *6-31 (D. Me. Jan. 27, 2016), and in the Court of Appeals for the

First Circuit's opinion in *Filler v. Kellett*, 859 F.3d 148, 150-52 (1st Cir. 2017). On August 28, 2018, Mr. Filler and all of the Defendants except Linda Gleason filed a Stipulation of Dismissal with the Court. *Stip. of Dismissal* (ECF No. 103).

Mr. Filler impleaded Ms. Gleason and on March 17, 2015, he served a copy of the Amended Complaint on her in South Greenfield, Missouri. *See Notice of Removal* Attach. 1, *Compl.*, Attach. 2, *Am. Compl.*; *Mot. for Entry of Default Against Linda Gleason Pursuant to F.R. Civ. P. 55*, Attach. 1 *Proof of Serv. of Summons and Compl.*, Attach. 2, *Aff. of Counsel in Support of Req. for Entry of Default as to Def. Linda Gleason Pursuant to F.R. Civ. P. 55* (ECF No. 27). Ms. Gleason has never filed an answer to the Amended Complaint nor apparently has she otherwise defended the civil action. Accordingly, on May 1, 2015, Mr. Filler moved for entry of default against Ms. Gleason and on June 1, 2015, the Deputy Clerk of Court duly entered a default against Ms. Gleason. *Order Granting Mot. for Entry of Default* (ECF No. 33).

On October 12, 2018, Mr. Filler moved for a default judgment against Ms. Gleason. *Pl.'s Mot. for Default J. Against Def. Linda Gleason* (ECF No. 106) (*Pl.'s Mot.*). Mr. Filler's Amended Complaint contains two counts against Ms. Gleason: Count Five, a malicious prosecution count, and Count Six, a negligent infliction of emotional distress count. *Am. Compl.* ¶¶ 96-101. Mr. Filler has requested a hearing and the entry of a judgment against Ms. Gleason. *Pl.'s Mot.* at 1-2.

## II.   DISCUSSION

Mr. Filler is seeking a default judgment under Federal Rule of Civil Procedure 55(b)(2). *Pl.'s Mot.* at 1-2. Rule 55 differentiates between defaults for a sum certain,

FED. R. CIV. P. 55(b)(1), and defaults for other types of relief. FED. R. CIV. P. 55(b)(2). In his motion, Mr. Filler acknowledges that he is proceeding under Rule 55(b)(2). *Pl.'s Mot.* at 1-2. To enter a default judgment in cases where there is no sum certain, the First Circuit generally requires a district court to hold an evidentiary hearing. *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 18-19 (1st Cir. 2003). Although the nature of proof of damages rests with Mr. Filler's counsel, the Court reminds his counsel that the rules of evidence will apply and hearsay will not be admitted, even absent objection.

Once a date, time, and place for the evidentiary hearing has been scheduled, the Court ORDERS Mr. Filler to provide advance notice of the date, time, and place of the evidentiary hearing to Ms. Gleason to allow her, if she wishes to do so, to appear and contest Mr. Filler's damages claims. The Court will require that Mr. Filler's counsel present proof of such notice.

The Court also anticipates that Mr. Filler will satisfy the First Circuit's requirement of demonstrating whether or not the defaulting party "has appeared for Rule 55 purposes . . . ." *Key Bank of Me. v. Tablecloth Textile Co. Corp.*, 74 F.3d 349, 353 (1st Cir. 1996) (quoting *Muniz v. Vidal*, 739 F.2d 699, 700 (1st Cir. 1984) ("[A] defaulting party 'has appeared' . . . if it has 'indicated to the moving party a clear purpose to defend the suit'")); *see also United States v. Spring House Assocs.*, No. 1:15-cv-00057-JAW, 2015 U.S. Dist. LEXIS 107053, at *6 (D. Me. Aug. 14, 2015) ("Before issuing a default judgment, the Court will require the United States to demonstrate compliance with *Key Bank*"); *Katahdin Paper Co. v. U&R Sys., Inc.*, 231 F.R.D. 110,

3

112-13 (D. Me. 2005). There is no indication in this record that Ms. Gleason has appeared or otherwise defended the case, but the Court expects counsel for Mr. Filler to place evidence to that effect on the record.

In addition, the Court will look to counsel for Mr. Filler for guidance on the implications of the prior settlements on his claim for damages against Ms. Gleason. In his Amended Complaint, Mr. Filler alleges that Ms. Gleason with his ex-wife Ms. Arguetta concocted false allegations of sexual abuse against him in order to allow Ms. Arguetta to gain custody of their children with an ultimate plan of having Ms. Arguetta and their children move into Ms. Gleason's home. *Am. Compl.* ¶¶ 617-23. Mr. Filler alleges that Ms. Gleason set about subjecting him to a malicious prosecution, including filing a false report about Mr. Filler to law enforcement, posting false comments on the internet, accessing Mr. Filler's confidential medical records, and testifying falsely at Mr. Filler's first criminal trial. *Id.* ¶¶ 624-40.

Mr. Filler also alleges that on April 25, 2007, the Gouldsboro Police Department allowed Ms. Gleason to sit with Ms. Arguetta during a police interview. *Id.* ¶ 148. After Gouldsboro Police Department Chief Wycoff left the room, the video recorder captured Ms. Gleason telling Ms. Arguetta that "her report of sexual abuse against her husband was her way of 'fighting for the children'", *id.* ¶ 149, and Ms. Gleason, who is a nurse, advised Ms. Arguetta to "cry stating that 'it wouldn't seem real' unless Arguetta cried during the interview." *Id.* ¶¶ 150-51. Ms. Arguetta told Ms. Gleason that she did not feel like crying, but Ms. Gleason "repeatedly urged her to cry." *Id.* ¶ 151. When Chief Wycoff returned to the interview room, Ms. Arguetta

4

began crying hysterically. *Id.* ¶ 153. This interview led to serious criminal charges against Mr. Filler and the involvement of District Attorney Kellett and her unfortunate handling of this and other evidence, leading to Mr. Filler's indictment, trial, conviction, appeal, retrial, and ultimate vindication.

In these circumstances, where Ms. Gleason had a part in setting in motion the prosecution of Mr. Filler, but where other actors, specifically but not limited to Assistant District Attorney Kellett, had a more significant role in his actual prosecution, including her failure to turn over a complete version of the Gouldsboro police videotape to defense counsel, the Court will look to Mr. Filler's counsel for an explanation of (1) how Maine tort law on joint and several liability among other settling Defendants and Ms. Gleason applies, if it does, to this case, (2) whether the Court should consider the settlement, (3) if so, how the concepts of contribution and indemnification apply to this situation, and (4) if they do, what damages causally flow from Ms. Gleason's actions as opposed to the actions of other settling Defendants. Thus, for example, Mr. Filler should be prepared to inform the Court whether it should calculate a total damages figure and deduct some portion or the full amount of the settlement, isolate only those damages directly attributable to Ms. Gleason's conduct, or ignore the settlements altogether.

Finally, the Court will look to Mr. Filler's counsel for advice on how the Court should consider the unique nature of the theories of action against Ms. Gleason: malicious prosecution and negligent affliction of emotional distress. For example, as Ms. Gleason did not have the authority to prosecute Mr. Filler and Assistant District

5

Attorney Kellett was disciplined for her unprofessional conduct, the Court will look to Mr. Filler's counsel for assistance in assessing Ms. Gleason's role in a state-initiated malicious prosecution and in assessing the causal reach of Mr. Filler's damages as caused by Ms. Gleason's negligent infliction of emotional distress.

## III. CONCLUSION

The Court GRANTS Mr. Filler's request for a hearing on his Motion for Default Judgment (ECF No. 106) and the Court expects his counsel to contact the Clerk's Office to schedule a mutually convenient date and time for the evidentiary hearing.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 9th day of November, 2018